# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DEVON JAMAL TOWNSEND,

    Plaintiff,

    v.

DEPT. OF PUBLIC SAFETY
AND CORRECTIONAL SERVICES,
CORIZON HEALTH SERVICES,
WARDEN RICHARD J. GRAHAM, JR.,
C.O. II AMY CONNELL,
CO II JOHN MOST,
LT. JAMES SMITH,
CO II BRADLEY RITCHIE,
C.O. LANE BUTERBAUGH,
C.O. II. JOSHUA HENRY,
C.O. II DANIEL FRENZEL,
C.O. II JUSTIN BROOKS,
C.O. II HARRY CARR,
C.O. II JENNIFER BIDDLE,
C.O. II JAMES D. TICHINEL,
C.O. II WILLIAM LOGSDON,
SGT. FLOYD BENSON II,
SGT. SLATE and
HEARING OFFICER JAMIE FARRIS,

    Defendants.

Civil Action No.:  TDC-19-2803

# MEMORANDUM OPINION

Plaintiff Devon Jamal Townsend, an inmate at the Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed a Complaint under 42 U.S.C. § 1983 against the Maryland Department of Public Safety and Correctional Services ("DPSCS"), Corizon Health Services ("Corizon"), former WCI Warden Richard J. Graham, Jr., Adjustment Hearing Officer Jamie Farris, Lt. James J. Smith, Sgt. Floyd Benson, Sgt. Slate, Correctional Officer ("C.O.") II

Amy Connell, C.O. II John Most, C.O. II Bradley Ritchie, C.O. II Lane Buterbaugh, C.O. II Joshua

Henry, C.O. II Daniel Frenzel, C.O. II Justin Brooks, C.O. II Harry Carr, C.O. II Jennifer Biddle,

C.O. II James D. Tichinel, and C.O. II William Logsdon, alleging excessive force and the failure

to provide adequate medical care in violation of the Eighth Amendment to the United States

Constitution, and a denial of his due process rights under the Fourteenth Amendment. Pending

before the Court is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed

by all Defendants except Corizon, Slate, and Buterbaugh, who have not yet been served. Having

reviewed the pleadings, briefs, and submitted materials, the Court finds no hearing necessary. *See*

D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART

and DENIED IN PART.

**BACKGROUND**

## I.     Use of Force

According to Townsend, on April 28, 2019 at approximately 6:55 p.m., he was assaulted

by Defendants C.O. II Bradley Ritchie, C.O. II Amy Connell, and C.O. II John Most. Prior to that

time, Ritchie came to Housing Unit 2, in which Townsend's cell was located, to assist with a

broken pipe that was pouring out water. When Townsend asked Ritchie if he could go into his cell

to protect his property from the water, Ritchie denied the request and directed Townsend to go to

the recreation hall. According to Ritchie, Townsend cursed at him in response. Ritchie then

ordered Townsend to submit to handcuffing. Although Ritchie asserts that Townsend continued

to be disrespectful and resisted, Townsend at some point complied with this command and was

handcuffed behind his back. Ritchie, along with Connell and Most, escorted Townsend to Housing

Unit 4, in which segregation housing is located.

Townsend alleges that while they were on the way to Housing Unit 4, Connell "constantly threatened to pepper spray" him. Compl. ¶ 22, ECF No. 1. When they reached Housing Unit 4, Ritchie and Most escorted Townsend through a side door and, once inside, began assaulting him. Most pushed Townsend's face against the wall while Ritchie punched him in his side. During the assault, Townsend saw C.O. II Justin Brooks and C.O. II Harry Carr come around the corner at the end of the hallway and heard more officers coming from the property room behind him. One of the officers yelled, "Get him on the ground." *Id.* ¶ 26. Townsend was then thrown to the ground where he continued to receive punches and kicks to his sides, back, and stomach from Ritchie, Most, Connell, Brooks, and Carr. When Townsend tried to roll away, someone grabbed his feet and dragged him into the property room, where the same officers continued to stomp on Townsend and punch him in the back and sides. Townsend alleges that C.O. II Joshua Henry was also present and believes that he participated in the assault.

In a declaration, Most asserts that he never heard Connell threaten to pepper spray Townsend, denies that he held Townsend's face up against the wall and allowed another officer to assault Townsend, and denies punching or kicking Townsend or witnessing another officer do so. He also states that once he and others escorted Townsend to the entrance of Housing Unit 4, C.O. II Lane Buterbaugh, C.O. II Daniel Frenzel, and Henry took over the escort, and Most left the area.

Townsend asserts that after the initial attack, Frenzel dragged him into the strip cage located in the property room, slammed Townsend's head into the wall twice, and stood over him, taunting him to "do something." *Id.* ¶ 28. Townsend, however, remained handcuffed. Buterbaugh then asked Frenzel to move aside and sprayed Townsend in the face with a pepper spray fogger.

According to Buterbaugh, while he was escorting Townsend to the strip cage in the property room, Townsend "aggressively attempted to pull away and delivered numerous leg kicks

3

to my lower right leg," causing him to have to use pepper spray on him and then, with the assistance of other officers, restrain him on the ground and then move him into the strip cage. Compl. Ex. B, ECF No. 1-1. Townsend denies assaulting Buterbaugh. In a declaration, Brooks has asserted that he arrived in the strip cage area after the pepper spray had already been deployed, that at that point, Henry and Frenzel were securing Townsend in the strip cage, and that he did not punch or kick Townsend and did not see any other correctional officer do so.

Townsend alleges that C.O. II Jennifer Biddle and C.O. II James D. Tichinel were in the "control bubble" observing the assault and closed the doors to all the tiers so the attack on Townsend could occur in isolation and without interruption. Compl. ¶ 31. He asserts that Biddle, Tichinel, and Henry were complicit in the assault on him because they did not report what they had seen. In a declaration, Biddle acknowledges that she was one of two officers responsible for operating the control panels and secured the tier doors to prevent any further escalation of the incident, but she states that from her vantage point she could not see the strip cage area.

On May 1, 2019, Townsend filed an Administrative Remedy Procedure complaint ("ARP") about the alleged assault on him. On May 30, 2019, the ARP was dismissed because there was an investigation by the Internal Investigations Division ("IID").

## II.    Medical Care

After Townsend was pepper sprayed by Buterbaugh, he was seen by medical staff. Townsend complained of rib pain and told the nurse that he believed that his rib was broken. The nurse detected clear breathing and did not identify any injuries based on a visual observation, so she released him back to the correctional officers without any treatment for his ribs.

The next day, on April 29, 2019, Townsend notified Sgt. Floyd Benson, who was near his segregation cell on Housing Unit 4, that he was experiencing discomfort in his ribcage, said that

4

he believed that his ribs were broken from the assault, and asked for emergency care and an x-ray. Benson, as well as Sgt. Slate and Lt. James Smith who were also nearby, ignored his complaints. According to Townsend, he asked for assistance from four different nurses on April 29 and 30— three who were conducting medication rounds and one who provided mental health care—but no one arranged for any medical care for his ribs.

At that time, Townsend had been placed on "staff alert" status, apparently as a result of the April 28 incident, and thus had no access to sick call. Compl. ¶ 35. Townsend remained in that status until May 1, 2019. At that point, Townsend was removed from staff alert status, was moved to another cell, and was able to submit his first sick call slip about his ribcage pain. He spoke to one nurse on May 1 and two nurses on May 3 about his rib pain but received no assistance. Townsend submitted additional sick call slips on May 4 and May 7, and on May 6 he wrote a letter to Warden Richard J. Graham notifying him of the alleged assault against him and stating that he wished to file formal charges against the correctional officers.

On May 9, 2019, Lt. Smith had Townsend pulled out of his cell, had photographs taken of his ribcage and bruises around his wrist, and had Townsend provide a written statement about the incident. When Townsend asked about sick call requests, Lt. Smith told him that the nurses had not received them. Later that day, Townsend received a sick call visit from Nurse Dennis, who examined him in his cell and told him that he had submitted a request for an x-ray.

On May 13, 2019, Lt. Smith asked Townsend to "sign off on an ARP." *Id.* ¶ 41. When Townsend told Lt. Smith that his ribs were broken as a result of the assault and asked for medical assistance, Lt. Smith said, "If I get you out that cell I'm going to get you in a blind spot and take a few more shots at you." *Id.*

5

On May 15, 2019, Townsend filed an ARP about the lack of medical treatment for the injury to his ribs. At that point, Townsend had not yet received an x-ray. On May 22, 2019, Townsend had a sick call visit with a nurse who requested that he receive an appointment with a medical provider, but he did not receive that appointment. On June 7, 2019, Townsend received a response to his ARP stating that it was "meritorious in part." Compl. Ex. G, ECF No. 1-1. The response stated that when Townsend was evaluated on April 28 after the pepper spraying, no injuries were observed, and when he received a "wellness check" on May 9, he had no swelling or bruising and had a full range of motion. *Id.* It acknowledged, however, that Townsend had submitted several sick calls but was not seen "in a timely manner," and it stated that the medical scheduler would be "educated on the importance of scheduling sick calls within the established timeframe." *Id.*

On June 14, 2019, Townsend received an x-ray of his rib area. On June 21, 2019, a nurse noted that the x-ray revealed that Townsend had suffered a broken rib and referred him to a medical provider. On August 8, 2019, however, Dr. Jaleh K. Daee reviewed the x-ray and saw no broken rib but identified a possible hematoma. Dr. Daee examined Townsend and found that he had a "slight prominency" in the area of the lower two to three ribs on his left side. Compl. Ex. J-a, ECF No. 1-1. Although Dr. Daee noted that Townsend reported that the area was no longer painful, Townsend denies making that statement. Rather, Townsend asserts that he still has a lump in his lower left ribcage area that causes a "constant ache that never goes away." Compl. ¶ 49.

## III.    Disciplinary Proceedings

Based on the April 28, 2019 incident, Townsend received two Notices of Inmate Rule Violations ("Notices"). In a Notice drafted by Ritchie recounting Townsend's alleged cursing at Ritchie and refusal to submit to handcuffing and resistance to authority, Townsend was charged

6

with violating Rule 312, interference with a search; Rule 316, disobeying an order; and Rule 410, disrespect, insolence, or use of vulgar language. At a hearing on May 9, 2019, Townsend denied using vulgar and disrespectful language and instead stated that he had "kindly asked" Ritchie if he could open his cell door so he could get his belongings off the wet floor. Mot. Dismiss Ex. 1 at 7-8, ECF No. 19-2. Nevertheless, the hearing officer, Jamie Farris, concluded that Townsend had disobeyed an order in violation of Rule 316, and that he had been verbally aggressive in violation of Rule 410, but found Townsend not guilty of violating Rule 312. Townsend was sentenced to 45 days of segregation and 60 days of lost good conduct time for the violation of Rule 316 and received no sanctions for the violation of Rule 410. This Notice is not a subject of the Complaint.

Based on a Notice drafted by Buterbaugh, in which Buterbaugh recounted Townsend's alleged kicks to his lower leg that necessitated the use of pepper spray, Townsend was charged with violating Rule 101, committing an assault or battery on correctional staff, and Rule 316, disobeying an order. A hearing on May 9, 2019 was postponed because Townsend requested the opportunity to present witnesses, specifically, Brooks, Carr, Ritchie, Buterbaugh, and Frenzel. The hearing was rescheduled to May 22, 2019, the date on which Townsend was seen for a sick call request. According to Townsend, he was never notified about the hearing, was not asked to attend it, and did not waive his right to attend. The hearing, however, was held *in absentia* based on an Inmate Waiver of Appearance form, presented by C.O. II William Logsdon in his capacity at the institutional representative at the hearing, in which Henry attested that Townsend had stated that he wished to waive his appearance by stating, "Do what you want. I don't care." Mot. Dismiss Ex. 1 at 23, 28, ECF No. 19-2. Hearing Officer Farris found Townsend guilty of assaulting Buterbaugh, based in part on photographs showing marks on Buterbaugh's leg "consistent with being kicked," but not guilty of disobeying an order because "no direct orders" were issued. *Id.* at

7

25. Townsend was sentenced to 60 days of segregation, concurrent to the sentence on the Notice filed by Ritchie, and 60 days of good conduct credit were revoked.

On June 1, 2019, Townsend appealed Farris's decision on the grounds that he was denied due process because he had not been informed of the hearing and noted that the hearing originally had been postponed so that his request for witnesses could be accommodated. Although his appeal is stamped as received in the Warden's office on June 3, 2019, there is nothing in the record stating the result of any review.

## IV.    The Complaint

Based on the facts relating to the alleged assaults against him, Townsend alleges that Ritchie, Most, Connell, Buterbaugh, Frenzel, Henry, Brooks, and Carr used excessive force against him in violation of his Eighth Amendment rights. He also claims that these Defendants, along with Biddle and Tichinel, violated applicable DPSCS regulations requiring them to report the use of unnecessary force and to report their co-workers for "negligence in the performance of duty." Compl. at 9.    Finally, he alleges that Buterbaugh violated DPSCS regulations by filing a false report about the incident.

Based on the facts relating to the alleged failure to provide him with medical care following the assaults, Townsend alleges that Sgt. Benson, Sgt. Slate, and Lt. Smith violated his rights under the Eighth Amendment by showing "a deliberate indifference" to his health and welfare when they left him in a bare cell from April 29 to May 1, 2019 with nothing but a "mat" and refused to allow him to receive medical assistance when he was "in extreme pain." *Id.* at 9-10. He further alleges that "Corizon medical staff blatantly refused me proper medical attention" and "was negligent in providing medical care in a timely manner." *Id.* at 10.

8

Based on the facts relating to the May 22, 2019 disciplinary hearing, Townsend asserts that Logsdon and Farris were complicit in covering up the assault against him because they denied him the chance to face his accuser, and that they violated his right to due process when they relied upon a forged waiver of appearance to exclude him from his adjustment hearing. Neither Logsdon nor Farris have provided evidence refuting the claim of a forged waiver form.

As relief for all of his claims, Townsend seeks compensatory damages, punitive damages, and termination of all Defendants from their employment with DPSCS.

## DISCUSSION

In their Motion, Defendants seek dismissal or summary judgment on all claims. Specifically, Defendants assert that the claims against DPSCS are barred by the Eleventh Amendment to the Constitution; that the claims against Warden Graham and Lt. Smith must be dismissed because the allegations against them are grounded in a theory of vicarious liability; that the claims that Defendants violated state policies or procedures do not state valid causes of action; and that summary judgment should be granted in Defendants' favor on the claims of excessive force, inadequate medical care, and a due process violation arising from the imposition of discipline at a hearing at which Townsend was not present. Although Defendants also seek summary judgment on any claim of unconstitutional conditions of confinement, the Court does not find that Townsend asserted such a claim in the Complaint and thus need not discuss that issue. Defendants also assert the defense of qualified immunity, but where they provide no argument for application of the doctrine other than boilerplate statements on the legal standard, the Court will not apply the doctrine at this stage of the case.

## I.   Legal Standards

In their Motion, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment pursuant to Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Where Defendants have submitted exhibits with their Motion, the Court may consider such evidence only if it converts the Motion to one seeking summary judgment. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d);

10

*see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Here, the notice requirement is satisfied by the title of the Motion, and Townsend has not requested discovery in advance of the resolution of the Motion. Accordingly, the Court will consider the Motion as seeking summary judgment as to those arguments requiring consideration of the submitted exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    Eleventh Amendment

As an initial matter, the claims against DPSCS, a state agency, will be dismissed because it is immune from suit under the Eleventh Amendment. Under the Eleventh Amendment, a state government, including its departments and agencies, is immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Maryland has not waived its immunity under the Eleventh Amendment to suit in federal court. *See* Md. Code Ann., State Gov't § 12-202(a)

11

(LexisNexis 2014); *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020) (holding that "[a]lthough the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts [through § 12-202(a)], it has not waived its immunity under the Eleventh Amendment to suit in federal court"). Thus, the claims against DPSCS will be dismissed.

## III.    Vicarious Liability

Defendants also argue that the claims against Warden Graham and Lt. Smith should be dismissed because the Complaint does not allege that they personally violated Townsend's constitutional rights. In general, the doctrine of *respondeat superior*, or vicarious liability, does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisor may still be held liable under § 1983 if (1) "the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "the supervisor's response to th[e] knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Townsend alleges that Warden Graham is generally responsible for the conduct of all correctional officers working at WCI and that he did not properly train and supervise them so as to prevent the use of excessive force against him. He has not, however, alleged facts that would support a finding that Warden Graham had prior knowledge of excessive force by the other Defendants such that a failure to address it could be deemed to be a cause of the alleged excessive force against Townsend. As Townsend has not alleged facts sufficient to support a claim of supervisory liability against Warden Graham, the claim against Warden Graham will be dismissed.

12

As for Lt. Smith, Townend alleges that although he told Lt. Smith that his ribs were broken and that he needed medical attention, Lt. Smith failed to arrange for any such treatment and instead threatened to take him to a "blind spot" and hit him with  "a few more shots."  Compl. ¶ 41. Townsend's claim against Lt. Smith thus is not based on vicarious liability but on personal liability for denying him access to needed medical care.  The Court will not dismiss the claims against Lt. Smith as based on vicarious liability.

## IV.    Violations of Prison Rules

In addition to asserting constitutional violations, Townsend alleges that Defendants Ritchie, Most, Connell, Frenzel, Buterbaugh, Brooks, Carr, and Henry violated various provisions of the DPSCS Standards of Conduct, including section II.B.1. (Personal Conduct), section II.X. (Attitude Towards Inmates and Clients); section II.Y. (Use of Force); and section IV.E. (Category of Infractions/Type of Discipline).  *See* Md. Dep't of Pub. Safety & Corr. Servs., DCD No. 50-2, *Standards of Conduct & Internal Administrative Disciplinary Process* (1995).  He also alleges that Biddle, Tichinel, and Henry violated section IV.E.1.a.8 and IV.E.2.a.18 by failing to report infractions by other officers and acting with negligence; that Buterbaugh violated sections II.S.1.a and IV.E.2. by filing a false report; and that Logsdon violated section II.S.1.a by filing a false report.  It is firmly established, however, that a violation of state prison rules and regulations does not state a due process claim under § 1983 or otherwise give rise to a federal claim.  *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).  Thus, to the extent that Townsend seeks to assert additional causes of action based on these alleged violations of the DPSCS Standards of Conduct, those claims will be dismissed.  As the only claims made against Biddle and Tichinel relate to these alleged violations

13

of the DPSCS Standards of Conduct, they will be dismissed as Defendants. Any violation of the DPSCS Standards of Conduct may still be relevant to Townsend's constitutional claims.

## V.    Excessive Force

Because Townsend is an inmate alleging excessive force occurring in a prison, his § 1983 claim arises under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that (1) the injury or deprivation inflicted was objectively serious enough to constitute a violation; and (2) the prison official subjectively "acted with a sufficiently culpable state of mind." *Williams*, 77 F.3d at 761.

On the objective element, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). However, an Eighth Amendment violation can occur even if a correctional officer's action did not cause serious injury. *Id.* at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9

(1992). The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

On the subjective element, an inmate must show that correctional officers applied force "maliciously or sadistically for the very purpose of causing harm" and thus "inflicted unnecessary and wanton pain and suffering," rather than acting "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

The application of pepper spray may be part of a good faith effort to maintain or restore discipline, such as when it is needed to control recalcitrant inmates who ignore official commands. *See, e.g.*, *Williams*, 77 F.3d at 759, 763 (finding no Eighth Amendment violation where a correctional officer administered pepper spray after a prisoner had thrown water out of his cell's food slot as part of a protest and did not obey an order to remove his arm from the food slot); *Jackson v. Morgan*, 19 F. App'x 97, 99, 101 (4th Cir. 2001) (upholding the use of pepper spray 12 times when an inmate refused to comply with commands to move from his cell). However, "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Williams*, 77 F.3d at 763 (citation omitted). Courts have found that Eighth Amendment violations can be based on the unjustified use of excessive amounts of pepper spray. *See, e.g.*, *Iko*, 535 F.3d at 239-40 (holding that although some use of pepper spray was necessary to effect a cell extraction, a correctional officer violated the Eighth Amendment when he deployed an excessive amount

pepper spray after the inmate attempted to comply with the correctional officer's orders and did not react violently); *Furnace v. Sullivan*, 705 F.3d 1021, 1029-30 (9th Cir. 2013) (denying qualified immunity on an Eighth Amendment claim where the correctional officer discharged a can of pepper spray until it was empty and another can was also used); *Lawrence v. Bowersox*, 297 F.3d 727, 732-33 (8th Cir. 2002) (denying a motion for summary judgment on an excessive force claim where a prisoner's cell was doused in pepper spray using a device similar to a fire extinguisher).

Viewing the allegations in the light most favorable to Townsend, the Court concludes that Townsend has stated a valid Eighth Amendment claim for excessive force relating to both the use of physical force and the use of pepper spray, and that there remain genuine issues of material fact that preclude summary judgment. In the Complaint, which through a separate declaration Townsend has asserted under the penalty of perjury, Townsend described an assault by multiple officers in which he was punched and kicked repeatedly while he was handcuffed, resulting in a fractured rib. Although the medical records conflict, in that one record states that a medical provider observed that a recent x-ray showed a fractured rib and another stated that he did not have a fractured rib, there is no dispute that Townsend, at a minimum, sustained a bruise or hematoma to the rib area during the incident on April 28, 2019. Notably, Defendants have provided no declarations from Ritchie, Connell, or Carr denying the allegations, and in his declaration, Most claims only that he left the area before the alleged assault occurred, not that no assault took place. Although Defendants have provided an IID investigation report relating to Townsend's alleged assault on Buterbaugh that purportedly justified the use of pepper spray, it does not address Townsend's allegations that he was beaten by Ritchie, Most, Connell, Brooks, and Carr outside of

16

the view of any surveillance camera. There is thus a genuine dispute of material fact on whether Townsend was beaten unnecessarily and maliciously by these officers.

As for the allegations that while Townsend was handcuffed, Frenzel slammed his head into the wall in the strip cage and that Buterbaugh used pepper spray on him, Frenzel does not deny the allegations against him. Although Defendants assert that Townsend had kicked Buterbaugh in the leg, necessitating the use of pepper spray, Townsend has denied this claim, and Buterbaugh, who has not yet been served, has not submitted a declaration about the incident. Where Brooks's declaration states that Brooks arrived after the pepper spray was discharged, it does not resolve the factual dispute. Under these circumstances, where there are genuine factual disputes about what happened in the strip cage that require credibility determinations, summary judgment is not warranted. *See Anderson*, 477 U.S. at 255. The Motion will be denied as to the excessive force claims.

## VI.    Medical Care

Townsend also asserts that Defendants Corizon, Sgt. Benson, Sgt. Slate, and Lt. Smith failed to provide him with adequate medical attention for his rib injury despite his repeated requests for treatment, in violation of the Eighth Amendment. In order to state an Eighth Amendment claim based on inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure that the needed care was available. *See Iko* 535 F.3d at 241.

17

Objectively, the medical condition at issue must be serious in that it "has been diagnosed by a physician as mandating treatment" or is one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

As to Corizon, the contract medical provider to the DPSCS, a private corporation providing services to a government agency may be held liable under § 1983 only if the violation was the result of a custom or policy that results in the denial of constitutional rights. *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 691, 694 (1978); *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999). Where Townsend has not alleged facts that would support a conclusion that any deliberate indifference to his medical needs was the result of a Corizon custom or policy to deprive inmates of their constitutional rights, the claims against Corizon will be

dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2) (2018). Any claims relating to individual medical staff must be asserted against those personnel in their individual capacity.

As for the individual Defendants, there is sufficient evidence to support a conclusion that Townsend had an objectively serious medical need. According to his account, he suffered a prolonged beating from certain Defendants that caused significant pain to his ribcage that resulted in what medical staff, with the aid of an x-ray, have characterized as either a broken rib or, at a minimum, a hematoma. Townsend has stated that the lump identified by Dr. Daee remains in his ribcage and causes him ongoing pain. As for the subjective component, Townsend asserts that he informed Sgt. Benson, Sgt. Slate, and Lt. Smith about his rib pain, as well as numerous nurses, but they made no efforts to arrange for him to receive medical attention. Despite his numerous requests for medical attention, Townsend did not receive a sick call visit until May 22, 2019, over three weeks after the incident, which the ARP response acknowledged to be not "timely." Compl. Ex. G. He did not receive an x-ray on his ribs until June 14, 2019, six weeks after the injury occurred. Significantly, Townsend's uncontroverted statement that Lt. Smith not only refused to provide him with medical care but instead stated that if he got him to a "blind spot" he would "take a few more shots" at him, Compl. ¶ 41, reflects not merely negligence, but malice that would support a finding of deliberate indifference. Thus, based on the present record, where Lt. Smith's alleged statement arguably acknowledged that Townsend had been assaulted and reflected ill will toward him, and there is evidence of a specific injury to Townsend's ribcage that continues to cause him pain, there is, at a minimum, a genuine issue of material fact whether the relevant Defendants were deliberately indifferent to Townsend's serious medical needs. The Motion will be denied as to the Eighth Amendment claims against the individual Defendants relating to a failure to provide medical care.

19

## VII.   Due Process

Townsend also argues that his due process rights were violated when he received discipline, including the loss of good conduct credits, at a hearing at which he was not present. In prison disciplinary proceedings, when a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 558, 563-64 (1974). The due process requirements include advanced written notice of the charges, a hearing at which the prisoner may be present, the right to call witnesses and present evidence at the hearing when doing so is not inconsistent with institutional safety and correctional goals, and a written decision. *Id.* at 564-566. Here, Townsend argues that he was denied the opportunity to attend the May 22, 2019 hearing at which he received discipline of 60 days of segregation and the loss of 60 days of good conduct credits based on the conduct alleged in the Notice filed by Buterbaugh. Although Defendants have presented hearing records reflecting that a written waiver was presented by Logsdon and accepted by Hearing Officer Farris, Townsend denies that he waived his presence and has labeled the waiver form as a forgery. Notably, the waiver form is signed by Henry, not by Townsend, with a handwritten annotation asserting that Townsend said, "Do what you want. I don't care." Mot. Dismiss Ex. 1 at 28. As noted by Townsend, the waiver is arguably inconsistent with his prior request to have multiple witnesses appear for the hearing, a request that resulted in a postponement of the hearing from May 9 to May 22. Further, neither Logsdon, the institutional representative at the hearing who presented the waiver, nor Henry, who signed the waiver form, have provided any additional statements contradicting Townsend's claim that the waiver form was falsified. Lastly, the record is incomplete in that no information has been provided on the result of Townsend's appeal of the hearing officer's decision. Because there are material facts in dispute

on whether Townsend waived his right to be present at the hearing, the Motion will be denied on the due process claim.

## VIII.  Qualified Immunity

Although Defendants assert the defense of qualified immunity, they merely recite general case law on the relevant standards and provide no analysis specific to this case. On this basis alone, the Court will deny the Motion. Even if it were to consider the defense, the Court finds that the constitutional rights at issue—the Eighth Amendment right against excessive force against inmates, the Eighth Amendment right to be free from deliberate indifference to a serious medical need, and the Fourteenth Amendment due process right to a hearing before the imposition of discipline including the loss of good conduct credits—were clearly established at the time of the incidents at issue. Defendants offer no persuasive argument to the contrary. As to whether the rights were actually violated, as discussed above, there are genuine disputes of material fact that preclude summary judgment at this time. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005). Qualified immunity thus does not provide a basis to grant the Motion.

21

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to the claims against DPSCS, which will be dismissed with prejudice, and the claims against Warden Graham, Biddle, and Tichinel, will be dismissed without prejudice. The Motion will be otherwise denied. The claims against Corizon will also be dismissed without prejudice. Defendants' counsel is directed to file under seal the last known home address for Defendants Buterbaugh and Slate for the purpose of serving the Complaint. A separate Order shall issue.


Date: May 11, 2021

THEODORE D. CHUANG
United States District Judge